UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 1:18-cv-21511-UU

GIANNINA SOPO, on behalf of herself and
all others similarly situated,

    Plaintiff,

vs.

LUX COSMETIC SURGERY CENTER CORP., a Florida Profit Corporation; SEDUCTION COSMETIC CENTER CORP., a Florida Profit Corporation; NEW YOU PLASTIC SURGERY & SPA CORP., a Florida Profit Corporation; CG BEAUTY PLASTIC SURGERY CORP., a Florida Profit Corporation; JARDON'S MEDICAL FOR PLASTIC & BARIATRIC SURGERY CORP., a Florida Profit Corporation; BUTTERFLY COSMETIC CENTER CORP., a Florida Profit Corporation; LUIS R. JARDON, individually and GRETEL JARDON, individually,

    Defendants.
_____/

## PLAINTIFF'S STATEMENT OF CLAIM

Plaintiff, Giannina Sopo ("Plaintiff" or "Ms. Sopo"), hereby files her Statement of Claim, pursuant to the Court's Order and Referral in Actions Brought Under the Fair Labor Standards Act [D.E. 7], and states[1]:

**INTRODUCTORY REMARKS:**

Based on the factors relied upon by the Department of Labor and the 11th Circuit Court of Appeals, Plaintiff was an employee and not an independent contractor. The Eleventh Circuit cases clearly establish that the "economic realities test" is the standard to be applied in determining

---

[1] Plaintiff reserves the right to amend and supplement her Statement of Claim as discovery progresses.

1

whether a worker is an employee covered by the FLSA, or is an independent contractor who is not covered by the Act. *Medrick v. Albert Enterprises, Inc.,* 508 F.2d 297 (5th Cir.1975); *Villarreal v. Woodham,* 113 F.3d 202 (11th Cir.1997); *Freund v. Hi–Tech Satellite, Inc.,* 185 Fed. Appx. 782 (11th Cir.2006). *See also Antenor,* 88 F.3d 925 (applying the economic realities test in resolving a joint employer issue under the FLSA).

Each of those pertinent Eleventh Circuit decisions recite various factors to be considered in applying the economic realities test, and the lists are not identical. All of the cases agree, however, either implicitly or explicitly, that "[n]o one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor—economic dependence." *Freund, supra,* 185 Fed. Appx. at 783 (quoting *Usery v. Pilgrim Equip. Co.,* 527 F.2d 1308, 1311 (5th Cir.1976)).

The factors listed in the cases include: (a) whether the alleged employer had the power to hire and fire the workers in question; (b) whether the alleged employer supervised and controlled the employee work schedules or conditions of employment; (c) whether the alleged employer determined the rate and method of payment; (d) whether the alleged employer maintained work time records; (e) whether the worker performed a specialty job requiring specialized training or skill; (f) whether the contractual terms of the employment varied in a material way as one worker succeeded another; (g) whether the workers had business organizations that could offer the worker's services to others; (h) whether the alleged employer supplied the premises and/or the equipment necessary to perform the work; (i) whether the worker employed others to assist in performing the job; (j) the employee's opportunity for profit or loss depending upon management skill; (k) the degree of permanency or duration of the working relationship; and (l) the extent to which the service rendered by the worker is an integral part of the employer's business.

A simple review of the circumstances of Plaintiff's work for and with the Defendants makes it obvious that Plaintiff was an employee. The fact that Defendants routinely misclassified numerous workers as independent contractors when they were employees, in fact, doesn't bode well for the Defendants. Additionally, Plaintiff was non-exempt (she doesn't qualify for any exemption).

Plaintiff worked from mid-August, 2017 until her surprise termination on February 26, 2018 (about 26 weeks). Plaintiff worked for as many as six days per week and some days more than 14 hours. Her office/work schedule which she typically followed was as follows:

|  | Typical office/work schedule | Hours |
|---|---|---|
| Monday | 5:30 A.M. - 7:30 P.M. | 14 |
| Tuesday | 8:30 A.M. - 7:00 P.M. | 10.5 |
| Wednesday | 6:00 A.M. - 7:00 P.M. | 13 |
| Thursday | 6:30 A.M. - 7:00 P.M. | 12.5 |
| Friday | 5:00 A.M. - 7:30 P.M. | 14.5 |
| Saturday | 9:00 A.M. – 3:00 P.M. | 6 |
|  | Total: | 70.5[2] |

Plaintiff did not take a bona fide meal period and essentially "worked through lunch." Defendants failed to keep timekeeping records as is required by the FLSA.

Plaintiff averaged 70.5 hours per week for about 26 weeks or 793 hours of overtime. Plaintiff's weekly pay of $1,300[3] divided by 70.5 yields a regular hourly rate of $18.44 and an overtime rate of $27.66. Overtime should have been paid for an average of 30.5 hours at $27.66/hour or $843.63/week for the 26 weeks or $21,934 in compensatory damages and an additional statutory amount of $21,934 in liquidated damages for a total of $43,868.[4] Therefore:

---

[2] In addition, Plaintiff also worked at night after hours and on weekends responding to and sending texts, phone calls and emails. Those hours have not yet been included. For purposes of these calculations, though, Plaintiff is using only 70.5 hours per week.
[3] Plaintiff received a raise to $1,400 per week a few weeks before she was fired. Therefore, this calculation may have to be adjusted upward.
[4] That amount applies just for the Plaintiff; it is believed that she is not the only current and former employee entitled to overtime for work performed over the last three years (who, ultimately, should be notified by court order and given

### A. An initial estimate of the total amount of alleged unpaid wages:

$21,934 in compensatory damages and an additional statutory amount of $21,934 in liquidated damages for a total of $43,868

### B. A preliminary calculation of such wages:

Plaintiff averaged 70.5 hours per week for about 26 weeks or 793 hours of overtime. Plaintiff's weekly pay of $1,300[5] divided by 70.5 yields a regular hourly rate of $18.44 and an overtime rate of $27.66. Overtime should have been paid for an average of 30.5 hours at $27.66/hour or $843.63/week for the 26 weeks or $21,934 in compensatory damages and an additional statutory amount of $21,934 in liquidated damages for a total of $43,868

### C. The approximate period during which the alleged FLSA violations occurred:

From mid-August, 2017 until her surprise termination on February 26, 2018 (about 26 weeks).

### D. The nature of the wages (e.g., overtime or straight time):

Overtime.

---

a chance to join this collective action. Note also it is believed that the Defendants failed to post the notice required by the FLSA and, therefore, there should be an equitable tolling of the Statute of Limitations all others similarly situated.

[5] Plaintiff received a raise to $1,400 per week a few weeks before she was fired. Therefore, this calculation may have to be adjusted upward.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 25th day of April, 2018, the foregoing document was served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

      SCHWARZBERG & ASSOCIATES
      *Attorneys for Plaintiff*
      2751 South Dixie Highway, Suite 400
      West Palm Beach, FL 33405
      Telephone: (561) 659-3300
      Facsimile: (561) 693-4540

      By: /s/ *Steven L. Schwarzberg*
      STEVEN L. SCHWARZBERG
      Florida Bar No. 306134
      steve@schwarzberglaw.com
      mail@schwarzberglaw.com

## SERVICE LIST

Carlos Santisteban, Jr., Esq.
carlos@csjrlaw.com
CARLOS SANTISTEBAN, JR., P.A.
6080 Bird Road, Suite 1
Miami, FL 33155
Telephone: (305) 930-8200
Facsimile: (305) 930-8300
*Counsel for Defendants*